UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11708-GAO

CORNWELL ENTERTAINMENT, INC., et al.,
Plaintiffs,

v.

ANCHIN, BLOCK & ANCHIN LLP, et al.,
Defendants.

OPINION AND ORDER ON CLAIMS FOR UNFAIR OR DECEPTIVE
ACTS OR PRACTICES AND EQUITABLE FORFEITURE
May 28, 2013

O'TOOLE, D.J.

The jury returned a verdict as to the plaintiffs' claims for negligent performance of professional services (Count I in the Fifth Amended Complaint, dkt. no 77), breach of fiduciary duty (Count II), and breach of contract (Count III). The Court reserved judgment on the plaintiffs' claims under Massachusetts General Laws Chapter 93A (Count VI), the New York Consumer Protection Act and corresponding common law (Count VII), and equitable forfeiture doctrine (Count V).[1] This Order addresses those reserved claims.

## I.  Unfair or Deceptive Acts or Practices under Massachusetts General Laws Chapter 93A

As noted, the operative complaint pleads claims under both Chapter 93A and the New York consumer protection statute, N.Y. Gen. Bus. Law § 349 (McKinney 2004), but having saddled up two horses, the plaintiffs now ride only one, arguing for a finding in their favor under the Massachusetts statute. The plaintiffs' Chapter 93A claim is for losses in investment accounts,

---

[1] The plaintiffs elected not to proceed on claims for conversion (Count IV) and intentional interference with advantageous relations (Count IX). I granted judgment for the defendants on the defamation claim (Count VIII).

mismanagement of the renovation of the Garfield Road property, causing Ms. Cornwell to miss a book deadline, and the defendants' post-complaint report to the Department of Justice.

The abandonment of the New York claim is prudent not only because it avoids the curious choice of law proposition that the laws of *both* jurisdictions should be invoked to furnish redundant relief for the same acts or omissions, but more substantially because on the facts of this case a claim pressed under the New York statute would fail. What is lacking is evidence that any deceptive or misleading conduct by the defendants was "consumer-oriented" in the necessary sense. Cf. N.Y. Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995) (finding that the plaintiff failed to meet the "threshold requirement of charging conduct that has a broad impact on consumers at large" where "the policy was not a standard policy, but was tailored to meet the purchaser's wishes and requirements."). In order to have a "broad[] impact on consumers at large," the alleged unfair or deceptive act or practice must "have the potential to 'affect similarly situated consumers.'" Vitolo v. Mentor H/S, Inc., 213 Fed. Appx. 16, 17 (2d Cir. 2007) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741 (Ct. App. N.Y. 1995)).

The plaintiffs agreed at trial that New York law governed the common law claims concerning the defendants' conduct as to the matters alleged in the complaint. It is inconsistent and illogical for the plaintiffs to now contend that Massachusetts statutory law should also be chosen to apply to those same acts or omissions. Even with respect to reserved matters now being addressed, the plaintiffs argue simultaneously that Chapter 93A's remedies should be available to them and that New York law regarding equitable disgorgement should also be applied. Perhaps this is an occasion for judicial estoppel, but in any event, in light of their

position that New York law applies to all the other claims, they cannot sensibly contend that Massachusetts law also applies, simply because it offers distinctive remedies.

Even if the plaintiffs' position were not inconsistent, however, conventional choice-of-law analysis would yield the same result. In a diversity case, a federal court uses the choice-of-law framework of the forum state, in this case Massachusetts. Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941)).

Regarding a Chapter 93A claim, the choice-of-law analysis may depend on whether the claim is analogized to a tort or a contract claim. See Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 11 (1st Cir. 1994) ("We hold that, at minimum, when a chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes."); Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609 (1st Cir. 1993) (holding that a Chapter 93A claim may trigger a contractual conflicts analysis where it is essentially an "embroidered" contract claim). The conduct which the plaintiffs believe violates Chapter 93A is a mix of tort claims and contract claims.

For the claims that sound more in contract than tort, it is clear that New York law should apply. The contract at issue in the case was negotiated and executed in New York, and the defendants' performance (or non- or mis-performance) was centered in New York. See Restatement (Second) of Conflict of Laws § 188 (1971).

As to tort-like claims, Massachusetts takes a "functional" approach in assessing what law should apply, analyzing which State has a more significant relationship to the conduct at issue.

3

Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994). The factors to be considered are those spelled out in the Restatement:

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Id. at 834 n.3 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

Taking those factors in order: First, it may be proper to say that with respect to the claim of mismanagement of the Garfield project the injury occurred where the real estate is located. As to the other claims, however, it is difficult to place in a physical location (that is, give them a "locus" within one State or another) harms that are not essentially physical in nature. To be sure, an "injury" could be characterized for these purposes not as the liability-producing occurrence but rather the impact of that occurrence on a plaintiff. If so, the injury would occur wherever the plaintiff is, and the first and third Restatement factors could be regarded as essentially the same. So, while it may be correct to say that as to the claim about the Garfield property the place of injury was Massachusetts, it seems too strained a project to try to say "where" losses in investment accounts occur, or "where" the opportunity to complete a book on time was lost.

In contrast, the conduct that purportedly caused the injury can be located in a place or places. The conduct alleged here was, put broadly, mismanagement. Any mismanagement occurred where the plaintiffs' affairs were being managed, and that was principally Anchin's New York office. This factor points to resort to New York law.

The third Restatement factor, where the parties are located, is a wash, as it commonly is in diversity cases, the plaintiffs centered in one State and the defendants centered in another.

The fourth factor points to New York. Though there were certainly relevant events that occurred outside that State, the parties' relationship was clearly centered in New York City.

In sum, one Restatement factor is neutral, one points to Massachusetts for some, but not all, of the claims, and two point to New York. Point-scoring aside, looked at through a "gestalt" lens, the view is the same. Underlying all of the claims is New York's interest in overseeing the conduct of businesses located within its borders. This case involves alleged misconduct by a New York based accounting firm that occurred primarily in New York, and New York has the more significant interest in the outcome of this case.

That was the belt; here are the suspenders: Even if Massachusetts law should be applied to the claim concerning Garfield property, I would not find as a substantive matter that the defendants' conduct violated Chapter 93A because I would not find that it was unfair or deceptive under that statute. The plaintiffs' claim regarding Garfield centers on the defendants' lack of proper and effective management. While it may have been negligent for Mr. Snapper not to have given more diligent oversight, I would not conclude on the trial evidence that he acted in any unethical or deceptive way with respect to the renovation project. Indeed, the trial testimony showed that the plaintiffs were very aware of the state of the Garfield project and actively involved in decision-making about it. So even if Chapter 93A were to apply to this claim, I would find that the defendants did not violate that statute in connection with the Garfield property.

## II.     Equitable Forfeiture

The plaintiffs plead that "[d]efendants, as faithless fiduciaries, have forfeited the right to any compensation from CEI or Ms. Cornwell and are required to make restitution to CEI and Ms. Cornwell of all sums paid as compensation *during the period of their disloyalty*." (Am. Compl. ¶ 56 (dkt. no. 77) (emphasis added).)

The parties agree that forfeiture is to be limited to "the period of disloyalty." Astra USA, Inc. v. Bildman, 455 Mass. 116, 130 (2009) (applying New York forfeiture law); see also Design Strategy, Inc. v. Davis, 469 F.3d 284, 301-02 (2d Cir. 2006) (affirming forfeiture of salary earned during the "period of disloyalty," a thirty-day period in thirteen years of employment). By claiming entitlement to all fees paid since they first engaged Anchin, the plaintiffs implicitly contend that the period of disloyalty covers the entire business relationship. In support of this position, the plaintiffs point exclusively to the jury's finding that the defendants breached a fiduciary duty, proximately causing damages to the plaintiffs in the amount of $22,405,400.

Both sides consented to the form of the general verdict. From the general verdict it is impossible to identify what the jury thought the period of disloyalty was so that an appropriate amount of forfeiture could be calculated. Under the circumstances, I cannot make a reasoned determination of the period of disloyalty, unless it was the entire period of the relationship. To the extent the jury may have intended that, it is plausible that their damage award has already included the disgorgement of fees, because the jury awarded damages exceeding the sum argued by the plaintiffs, even as augmented by all fees paid. If that was the case, no further award would be appropriate. Even if, alternatively, I were to find a narrower period of disloyalty (a finding that might be foreclosed by a broader jury finding), in light of the jury's punitive damage award,

as well as the size of the compensatory award, I would not regard it as equitable to make an additional disgorgement order. For these reasons, no forfeiture is ordered.

## **III.** **Conclusion**

In sum, Count VI (Mass. Gen. Laws Ch. 93A) is inapplicable, and Count VII (New York Consumer Protection Act) fails on the merits. An award under Count V (equitable forfeiture) is unnecessary and unwarranted, and I decline to order one. The plaintiff's Motion for Attorney Fees (dkt. no. 356) is DENIED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
    United States District Judge