UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11708-GAO

CORNWELL ENTERTAINMENT, INC., et al.,
Plaintiffs,

v.

ANCHIN, BLOCK & ANCHIN LLP, et al.,
Defendants.

ORDER
March 25, 2014

O'TOOLE, D.J.

The plaintiffs, Cornwell Entertainment, Inc. ("CEI"), Patricia Cornwell, and Staci Gruber, filed a multiple count complaint against the defendants, Anchin, Block & Anchin LLP and Evan Snapper. After a twenty-six day trial, the jury returned a verdict for the plaintiffs on the three counts submitted to them: negligent performance of professional services, breach of fiduciary duty, and breach of contract. The jury awarded the plaintiffs a total of $50.9 million, including $22.4 million in punitive damages. The remaining counts of the complaint were either dismissed or resolved by order of the Court in the defendants' favor.

Pursuant to Federal Rules of Civil Procedure 50 and 59, the defendants have moved for judgment as a matter of law and/or for a new trial.

**I.    Judgment as a Matter of Law – Rule 50(b)**

A.    Legal Standard

Under Rule 50,

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). The Court may not make credibility determinations or weigh the evidence presented at trial. See Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (citations omitted). However, a party opposing a Rule 50 motion must "present more than a mere scintilla of evidence and may not rely on conjecture or speculation." Id. (internal quotation marks omitted).

### B.   Waiver

The defendants' renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "is bounded by [their] earlier [Rule 50(a)] motion," and they cannot "introduce a legal theory not distinctly articulated in [their] close-of-evidence motion for a directed verdict." Parker v. Gerrish, 547 F.3d 1, 12 (1st Cir. 2008) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995)). The plaintiffs contend that the defendants have in their renewed motion raised the following new arguments that were not pressed in their Rule 50(a) motion and therefore must be regarded as waived: (1) the evidence is insufficient to support a claim based on the missed book deadline allegations; (2) the defendants' conduct in connection with the DOJ investigation is privileged; (3) the plaintiffs presented no evidence of causation or damages in connection with Garfield; and (4) there is no basis for punitive damages.

I agree with the plaintiffs that issues identified as (1), (3), and (4) were waived by failure to present them in the Rule 50(a) motion, but I agree with the defendants that the argument that their actions in reporting a potential campaign finance law violation was privileged is adequately subsumed in the argument, made in the Rule 50(a) motion, that the reporting did not, as a matter of law, constitute a breach of fiduciary duty. See Osorio v. One World Techs. Inc., 659 F.3d 81,

88 (1st Cir. 2011) (concluding that an argument that "simply seeks to 'flesh out'" a prior argument is not waived).

    C.    <u>Claims and Issues</u>

As noted above, three counts of the operative complaint were tried to the jury, asserting negligence, breach of contract, and breach of fiduciary duty. In support of the three asserted causes of action, the plaintiffs presented evidence of a variety of different acts or omissions that they claimed supported a jury verdict in their favor as to each cause of action. In other words, the plaintiffs' evidence offered the jury multiple ways of concluding that the defendants had acted negligently or in breach of contract or fiduciary duty. As a consequence, it was possible, for example, for the jury to find that the defendants were culpably negligent under all the various theories of liability presented or under some but not others. The same is true for the other counts. The plaintiffs' position now is a little difficult to understand, but it appears to be that unless the defendants can establish that there is *no* theory of liability sustained by the evidence that can support a recovery under a particular count, the defendants' motion must be denied as to *any* theory of liability proposed under that count.

The plaintiffs offered evidence of different ways the defendants could be held negligent: mismanagement of real estate, mismanagement of investments, carelessness in preparing tax returns, etc. Each occasion of negligence was alleged to have caused a distinct harm and therefore different potential damages. There were similar alternate theories presented for the other counts. There is no reason why those various separate potential bases for liability cannot be separately evaluated under Rule 50 and those found wanting of adequate evidentiary support weeded out. That is actually the purpose of the Rule 50 analysis. Suppose, for example, in an action for breach of fiduciary duty by a trustee with regard to two distinct trusts that there was

insufficient evidence as to a breach with respect to the first trust, but a sufficient basis for finding a breach as to the second. Rule 50 would authorize the court to submit only the issue (or claim or theory) as to the second trust to the jury and to grant judgment as a matter of law against the claimant as to the first. The plaintiffs' apparent argument to the contrary is meritless.

D. Statute of Limitations

The jury was instructed to apply a three-year statute of limitations as to Counts I (negligence) and III (breach of contract).[1] Specifically, the jury was instructed that "[a] finding for the plaintiff[s] on the theories of professional negligence or breach of contract to perform professional services must be based on evidence of liability-producing events that have occurred within the three-year period prior to the commencement of the suit; that is, from October 13, 2006, onward." (Tr. Day 25 at 31.) The jury was also informed that the "statute of limitations in question does not affect the claim for breach of fiduciary duty." (Id.)

Upon reexamination of the New York Civil Practice Laws and Rules and the relevant case law, I conclude that my instruction regarding the limitations period for the breach of fiduciary duty count (and claims) was erroneous. After reconsideration, I conclude that the applicable statute of limitations is also three years as to the plaintiffs' claims for breach of fiduciary duty. New York law is not pellucid on this point, but it appears to be the correct rule that "the statute of limitations for a breach of fiduciary duty cause of action depends on the substantive remedy which the plaintiff seeks." Scott v. Fields, 925 N.Y.S.2d 135, 138 (N.Y. App. Div. 2011); accord IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 272 (N.Y. 2009). Because the plaintiffs here seek only monetary relief, the breach of fiduciary duty claims

---

[1] "[A]ction[s] to recover damages for malpractice . . . regardless of whether the underlying theory is based in contract or tort" must be commenced within three years. N.Y. C.P.L.R. § 214(6).

4

are construed as "alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period." Id. (citation omitted).

    E.    Missed Book Deadline

As previously noted, the defendants have waived the argument that the plaintiffs' claims[2] involving the missed book deadline for Book of the Dead are not supported by legally sufficient evidence. Their argument that such claims are barred by the statute of limitations was properly preserved, however.

The plaintiffs contend that the defendants' failure to find a suitable place for her to concentrate on her writing caused Ms. Cornwell to miss her book deadline, preventing her from receiving her expected August 2006 advance until the following year.

The plaintiffs' claim involving Ms. Cornwell's missed book deadline accrued, at the latest, when she failed to submit her manuscript in August 2006. See Snyder v. Town Insulation, Inc., 615 N.E.2d 999, 1000 (N.Y. 1993) (holding that tort action accrued on date of injury, though the plaintiffs continued to sustain harm thereafter). The plaintiffs' contention that Ms. Cornwell suffered no injury until she turned in the manuscript for Book of the Dead in 2007, at which point "the book transformed from a 2006 release to a 2007 release" and her 2006 advance "morphed into her 2007 advance," (Pls.' Opp'n to Defs.' R. 59 Mot. at 19 (dkt. no. 420)), ignores the fact that she lost her entitlement to the advance when the scheduled time for payment, August 2006, came and went without her having satisfied the condition for payment, the submission of her manuscript. That that loss was but the first in a series of consequential harms

---

[2] The Court notes that the plaintiffs did not assert, either in their Amended Complaint (dkt. no. 77) or at trial, that Ms. Cornwell missed her book deadline because the defendants breached their fiduciary duty by being disloyal to her or acting in bad faith. The plaintiffs' theory was primarily that the defendants failed at the task of securing an appropriate place where she could write. The missed book deadline claim was therefore one grounded in the count for negligence.

is of no moment; that phenomenon is commonplace in tort and contract actions. The principle remains that the cause of action accrues when the first in a series of harms caused by a defendant's negligence has materialized. Snyder, 615 N.E.2d at 1000, 1002-1003. Since a cause must precede its effect, any negligence that caused the August 2006 loss necessarily occurred prior to then, well prior to three years before the commencement of the present action.

The so-called continuous representation doctrine does not help the plaintiffs. That doctrine tolls the running of the statute of limitations "only so long as the defendant continues to represent plaintiff in connection with the particular transaction which is the subject of the action and not merely during the continuation of general professional relationship." Transp. Workers Union of Am. Local 100 AFL-CIO v. Schwartz, 821 N.Y.S.2d 53, 56 (N.Y. App. Div. 2006) (internal quotation marks omitted); see also Zaref v. Berk & Michaels, 595 N.Y.S.2d 772 (N.Y. App. Div. 1993) ("[T]he facts are required to demonstrate continued representation in the specific matter directly under dispute."). Here, the plaintiffs complain about the manner in which the defendants handled specific, discrete real estate transactions in the early part of 2006. The fact that Mr. Snapper and Anchin continued to be retained by the plaintiffs to handle other real estate matters, among other things, beyond October 2006 does not support application of the doctrine.

For the foregoing reasons, the defendants are entitled to judgment as a matter of law as to any claims involving the 2006 missed book deadline. This is not insignificant. The plaintiffs' witnesses ascribed a loss of some $16 million to this claim, the largest single element of the various claims of damage, and the size of the jury award suggests that the jury found in the plaintiff's favor on this time-barred claim, though given the generality of the verdict questions this cannot be surely determined.

F.   DOJ Investigation

The plaintiffs asserted at trial that the defendants breached their fiduciary duty to the plaintiffs by maliciously reporting to the Department of Justice that Ms. Cornwell had violated federal campaign finance laws. According to the plaintiffs, the evidence at trial showed that "Anchin accused Ms. Cornwell—a former client to whom it owed a fiduciary duty—of a serious crime without making any effort to contact her for confirmation or refutation." (Pls.' Opp'n to Defs.' Rule 50(b) Mot. at 12-13 (dkt. no. 415).)

There was evidence that Ms. Cornwell was interested in public affairs and over time made a number of contributions to political candidates. There also was evidence that she was aware, at least as to a 2008 campaign, that she could not under applicable law directly contribute the sum she wanted to contribute and that she approved Mr. Snapper's solicitation of various persons to make contributions that would be reimbursed to them from Ms. Cornwell's funds. Both Mr. Snapper and Ms. Cornwell testified at trial that they were unaware that the structuring and reimbursement were punishable as crimes.

The evidence was that Anchin learned of Mr. Snapper's structuring and reimbursement of campaign contributions only as a result of an allegation in the plaintiffs' initial complaint in this action. The firm then retained counsel, and on advice of counsel "self-reported" the probable campaign finance law violations. The defendants thereafter cooperated with federal investigators and supplied documents (including documents concerning Ms. Cornwell's affairs) in response to a federal subpoena.

Under New York law, the self-report was subject to a qualified privilege, and can be the basis for actionable liability only if the defendants made knowingly or recklessly false statements or were motivated solely by malice. See Toker v. Pollak, 376 N.E.2d 163, 168 (N.Y. 1978).

There was no evidence that the information about the structuring and reimbursement of campaign contributions conveyed by the defendants to federal authorities was false. In her own testimony, Ms. Cornwell acknowledged that Mr. Snapper's structuring and reimbursement of the contributions was done at her instance; she denied only that she knew it was criminally wrong. The plaintiffs are left with the contention that the defendants' report to the Justice Department was done out of malice. The sole evidentiary basis for that contention, as to which the plaintiffs bear the burden of proof, Toker, 376 N.E.2d at 166, is that the report was made by the defendants after they had been first fired and then sued by the plaintiffs. That temporal circumstance is not itself a sufficient basis for a finding of malice, especially in light of the evidence that the defendants had a motive to mitigate any punishment that might be imposed on them by initiating a self-report. See 72 Fed. Reg. 16695, 16696 (Apr. 5, 2007). A reasonable jury would not have had a sound evidentiary, as distinguished from speculative, basis for finding that the defendants acted with actual malice. The upshot is that, given the qualified privilege, the report to the Justice Department could not be held to be a breach of fiduciary duty.

The response to the subpoena was absolutely privileged. See Toker, 376 N.E.2d at 166-67. See also Shillitani v. United States, 384 U.S. 364, 370 (1966).

Moreover, under New York law it was not a breach of fiduciary duty for the accounting firm to provide information to authorities without the former client's consent when "authorized or required by law." Rules of N.Y. Bd. of Regents § 29.10(c).

The defendants are entitled to judgment as a matter of law on this claim.

G.   NetJets

The plaintiffs' claim that Mr. Snapper failed to obtain the best possible deal when negotiating the plaintiffs' fractional-ownership contract with NetJets in 2006 is unsupported by

any legally sufficient evidence of damages. The only evidence of damages that the plaintiffs presented was Dr. Gruber's testimony that in 2010, when she negotiated a new contract with NetJets and switched to a smaller plane, the plaintiffs saved $232,000. She also testified that the new contract included perks that the old contract had not included, which she "believed" to be valued at "just over $300,000." This is the kind of "rel[iance] on conjecture or speculation" that does not constitute legally sufficient evidence. Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (citations omitted). Any reasonable jury would conclude that at least some of the difference between the contracts is explained by the plaintiffs' decision to downgrade to a smaller plane. Further, the plaintiffs failed to produce any evidence to show the value of the best contract that Mr. Snapper could have negotiated in 2006. Given the dearth of evidence on damages, judgment as a matter of law should enter against the plaintiffs on claims arising out of the negotiation of the 2006 NetJets contract.

> H.     Real Estate Transactions (Renaissance and Fifth Avenue)

The plaintiffs asserted negligence, breach of contract, and breach of fiduciary claims against the defendants for their conduct in connection with the abortive rental of the Renaissance condo and the Fifth Avenue apartment. As to the Renaissance condo, all the events tending to support liability occurred between January and May 2006. With respect to the Fifth Avenue apartment, the plaintiffs' evidence was that Mr. Snapper did not ensure that the apartment would be suitable for Ms. Cornwell's work and made the lease arrangements under false pretenses, forcing Dr. Gruber to pretend to be someone she was not. The plaintiffs asserted that the defendants were liable for the amount spent on rent and brokers' fees for duration of the unsatisfactory lease, which covered the period from May to July 2006. All the events occurred

well earlier than necessary for the claims to be timely within the three year limitation period extending backward from the filing of the complaint in October 2009.

The three year statute of limitations for negligence actions, breach of contract actions, and breach of fiduciary duty actions for monetary relief bars these claims. Again, the invocation of the continuous representation doctrine is not warranted.

The defendants are entitled to judgment as a matter of law on these claims.

I.      Other Claims

The defendants' motion for judgment as a matter of law as to other of the plaintiffs' claims is denied.

**II.     New Trial – Rule 59**

"The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A).

The defendants have submitted a lengthy list of reasons why the grant of a new trial is justified, but one suffices: since the defendants are entitled to judgment as a matter of law on the claims discussed above, and since "the jury's consideration of those claims may have affected verdict," Lattimore v. Polaroid Corp., 99 F.3d 456, 458 (1st Cir. 1996), there is no way to assess what the verdict on the remaining claims properly subject to jury evaluation would have been. See Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 29-30 (1st Cir. 2004) ("This rule applies not only to general verdicts encompassing multiple causes of action, but to special verdicts where a single verdict question encompasses multiple theories, one of which is defective.").

Here, the verdict makes it impossible to tease out the jury's findings as to individual issues or claims, and a new trial on issues other than those resolved against the plaintiffs by this Order is necessary.

### III.     Conclusion

For the reasons stated herein, the defendants' Renewed Motion for Judgment as a Matter of Law (dkt. no. 408) is GRANTED in part and DENIED in part, and the defendants' Motion for a New Trial (dkt. no. 409) is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge